**Opinion filed November 27, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00099-CV
_____

## CALIBER OIL & GAS, LLC, Appellant

## V.

## MIDLAND VISIONS 2000, ROGER HENDERSON, AND TONEY HENDERSON, Appellees

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. CV54602**

## O P I N I O N

This lawsuit concerns the ownership of 10.6 acres of land in Midland, Texas. Appellant, Caliber Oil & Gas, LLC, and Appellees, Midland Visions 2000, Roger Henderson, and Toney Henderson, all claim to own undivided interests in the property. Caliber sued Midland Visions and the Hendersons, as well as other individuals who are not parties to this interlocutory appeal, seeking to quiet title to

the property and to recover a proportionate share of the ad valorem taxes on the property that Caliber had paid.[1] Caliber also alleged that Midland Visions and the Hendersons filed fraudulent records pertaining to the property and that Midland Visions and Roger Henderson tortiously interfered with a contract between Caliber and a realtor.

Midland Visions filed counterclaims against Caliber for tortious interference with contract and, alternatively, tortious interference with prospective business relations.[2] The Hendersons filed counterclaims against Caliber for tortious interference with prospective business relations.[3] Pursuant to the Texas Citizens Participation Act, TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011 (West 2015) (the TCPA),[4] Caliber filed a motion to dismiss Appellees' tortious interference counterclaims and the Hendersons' request that Caliber's claims be dismissed. The trial court denied the motion to dismiss, found the motion was frivolous and intended to delay, and awarded Midland Visions $34,872.50 for reasonable court costs and attorney's fees.

---

[1]Caliber also asserted a trespass to try title claim. However, a page of Caliber's original petition is missing, and we are unable to ascertain the details of that claim.

[2]Midland Visions also filed counterclaims against Caliber for trespass to try title and for waste. Caliber did not move to dismiss these counterclaims.

[3]The Hendersons also filed counterclaims in which they (1) alleged that Caliber used "illegal and unethical tactics" to obtain interests in the property and knowingly filed fraudulent documents and (2) requested that Billie Ruth Henderson's interest in the property be awarded to them. Caliber did not move to dismiss these counterclaims.

[4]The Texas legislature amended the TCPA effective September 1, 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1–9, 12 (H.B. 2730) (to be codified at TEX. CIV. PRAC & REM CODE ANN. §§ 27.001, .003, .005–.007, .0075, .009–.010). Because the underlying lawsuit was filed prior to September 1, 2019, the law in effect before September 1 applies. *See id.* §§ 11–12. For convenience, all citations to the TCPA in this opinion are to the version of the statute prior to September 1, 2019. *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961–64, amended by Act of May 24, 2013, 83d Leg., R.S., ch. 1042, 2013 Tex. Gen. Laws 2499–2500.

In its first two issues, Caliber asserts that the trial court erred when it determined (1) that the TCPA did not apply to Appellees' tortious interference counterclaims and the Hendersons' request that Caliber's claims be dismissed and (2) that Appellees met their burden to establish by clear and specific evidence a prima facie case for each essential element of the counterclaims. In two additional issues, Caliber contends that the trial court erred when it failed to award attorney's fees, costs, and sanctions to Caliber and awarded attorney's fees and costs to Midland Visions.

We hold (1) that Caliber failed to carry its burden to establish that the TCPA applies to Appellees' tortious interference counterclaims and to the Hendersons' request that Caliber's claims be dismissed and (2) that the trial court did not abuse its discretion when it determined that Caliber's motion to dismiss was frivolous. We affirm the trial court's order.

*Background*

In 1946, Charlie and Phyllis Lewis acquired a 10.6-acre tract of land in Midland. Both of the Lewises died intestate, and after Phyllis's death in 1991, the Lewises' seven children inherited the property. Over the next twenty-five years, interests in the property were transferred by conveyance and by inheritance. Caliber alleges that, by January 2018, thirty-five individuals owned an interest in the north 7.1 acres of the tract and thirty-six individuals owned an interest in the south 3.5 acres of the tract. The interests at issue in this appeal are those owned by Billie Ruth Lewis Henderson, Patricia Smith Whitley, LaSundra Selmon, and Rhonda Clement.

Billie Ruth is the Lewises' daughter and the Hendersons' mother. Billie Ruth inherited a 1/7 interest in the property when her mother died in 1991 and inherited additional interests in the property when her brothers, James Howard Lewis and J.D. Lewis, died intestate in 2009 and 2011, respectively. On September 13, 2013, Billie

Ruth conveyed her "undivided one-fourth (1/4) interest" in the property to the Hendersons.[5]

Charlene Lewis Smith Brown inherited a 1/7 interest in the property when Phyllis Lewis died. Brown inherited additional interests in the land from both James Howard Lewis and J.D. Lewis and, after J.D.'s death, owned a 1/5 interest in the north 7.1 acres and a 6/35 interest in the south 3.5 acres. On September 13, 2013, Brown conveyed her interest in the property to Whitley, Selmon, Clement, and Rashon Cooks. After the conveyance, each of these individuals owned a 1/20 interest in the north 7.1 acres and a 3/70 interest in the south 3.5 acres. On June 29, 2015, Rashon conveyed his interest in the property to Robert Cooks.

On September 12, 2013, the Hendersons communicated to individuals who owned interests in the property that taxes were owed on the property. The Hendersons requested that the owners participate in the payment of taxes and stated that anyone who participated in "saving" the property would "re-coupe [sic] their tax money paid" when the property was sold before the remaining money from the sale was distributed to "all the heirs." A group of individuals who owned interests in the property agreed to an installment contract with the Midland County Central Appraisal District on September 12, 2013, to pay the taxes for years 2008 through 2012. Between September 12, 2013, and April 21, 2015, various individuals paid approximately $16,000 to the Appraisal District for back taxes and fees as well as for new taxes that had been assessed.

---

[5]Caliber and Midland Visions allege that, on November 29, 2003, Billie Ruth and her brother, James Howard Lewis, conveyed their interests in the south 3.5 acres of the property to Dawnyaell Shelby. Caliber also alleges that, on July 29, 2009, Billie Ruth conveyed her original 1/7 interest in the north 7.1 acres to Bobby Joe Lee and that, on September 13, 2013, Billie Ruth conveyed to the Hendersons only the interest in the property that she inherited in 2011. The Hendersons contest the validity of the 2003 conveyance to Shelby and the 2009 conveyance to Lee. The validity of any conveyance is not at issue in this appeal.

4

Between 2013 and 2017, the Appraisal District increased the appraised value of the property from $46,170 to $323,220 to over $500,000. The Appraisal District told the Hendersons that, due to a new law, they could not sign another agreement to pay the taxes in installments. After the taxes were not paid timely, the Appraisal District posted the property for sale on March 6, 2018.

Joel Gordon's law firm is Joel Amos Gordon, Esquire, PLLC. The PLLC is a member of Caliber. The other member of Caliber is Dahlia Land Services, LLC. James Brian Hillman and his wife are the members of Dahlia. The PLLC and Dahlia are individually involved in projects separate from Caliber. However, if both Hillman and Gordon are interested in a project, they use Caliber as the "vehicle" for that particular deal.

Gordon saw that the property was posted for sale and asked Hillman if he was interested in acquiring interests in the property. Hillman was interested in the property and, in early February 2018, sent approximately fifty letters on behalf of Caliber offering to purchase individual interests in the property. Caliber specifically offered to purchase the interests owned by Whitley, Selmon, and Clement.

Midland Visions was also interested in purchasing interests in the property. On February 27, 2018, Midland Visions agreed to pay Whitley, Selmon, and Clement $2,000 each for their interests in the property. On March 1, 2018, Whitley, Selmon, and Clement signed deeds that conveyed their interests in the property to Midland Visions and sent the deeds to Mac A. Starnes, an attorney who was serving as an intermediary between the parties. Midland Visions deposited $6,000 with Starnes and instructed him to transmit the funds to Whitley, Selmon, and Clement after he confirmed that each woman owned an interest in the property.

Around March 1, 2018, Gordon placed business cards for the PLLC on the doors of Whitley's and Robert Cooks's houses. Gordon wrote a note on each card

that stated that he was interested in purchasing interests in the property. On March 2, 2018, Whitley informed Gordon that she had already agreed to sell her interest in the property. Gordon checked the public records and did not find a conveyance of Whitley's interest in the property.

Whitley called Gordon on March 4, 2018, and told him that the contract for her interest in the land required that she, Selmon, Clement, and Robert Cooks all agree to sell their interests; that Cooks refused to sell his interest; that she had not received any money from the buyer; and that the contract had fallen through. Gordon agreed to pay Whitley, Clement, Selmon, and Cooks $5,000 each for their interests in the property.

Gordon contacted Hillman, who is a notary, and asked him to obtain deeds from Whitley and Cooks. Around midnight, Hillman went to Whitley's house. Whitley told Hillman that she, Clement, and Selmon had signed deeds that conveyed their interests in the property to Midland Visions. Hillman called Selmon and Clement, and all three women told him that they had not received payment from Midland Visions. Hillman, who is not an attorney, assumed that, if the consideration had not been paid, the prior deeds were not valid. Even though he recognized that it was a "risk," Hillman had Whitley sign a deed that conveyed her interest in the property to the PLLC.[6] Hillman notarized the deed. Hillman paid Whitley for her interest and the interests of Selmon and Clement with checks written on Caliber's bank account. Gordon checked the public records on the morning of March 5th to ensure that no deed that conveyed Whitley's, Selmon's, or Clement's interest in the

---

[6]Gordon was concerned that, because Hillman owned an interest in Caliber through Dahlia, "there might be some impropriety" if Hillman notarized a deed that conveyed property to Caliber. Both Gordon and Hillman intended that the PLLC would convey the interests in the property to Caliber. On March 21, 2018, the PLLC executed a deed that conveyed its interest in the property to Caliber.

6

property had been filed. Either Hillman or Gordon filed the deed signed by Whitley in the public records at 8:18 a.m. on March 5, 2018.

Later that day, Selmon and Clement signed deeds that conveyed their interests in the property to the PLLC. Selmon then told Midland Visions that she had executed a deed to another purchaser because she had not received payment from Midland Visions. At 3:19 p.m. on March 5, 2018, Midland Visions filed in the public records the March 1, 2018 deeds that conveyed Selmon's and Clement's interests in the property to Midland Visions. At 10:14 a.m. on March 6, 2018, Gordon filed in the public records the March 5, 2018 deeds that conveyed Selmon's and Clement's interests in the property to the PLLC.

Caliber paid the Appraisal District $60,092.87 for back taxes on the property, and the property was removed from the tax sale. On March 6, 2018, the Hendersons filed in the public records a "Lien for Nonpayment of Taxes" against the interests of Ervin Lewis, Dawnyaell Shelby, and Bobby Joe Lee. The Hendersons stated that they had paid $8,400 of the "back taxes" to "bring the property out of delinquency in 2013" and that Lewis, Shelby, and Lee had not contributed to those payments.

Starnes sent checks for $2,000 to Selmon and Clement on March 7, 2018, and to Whitley on April 30, 2018. None of the three women cashed the checks. On May 1, 2018, Midland Visions filed in the public records the March 1, 2018 deed that conveyed Whitley's interest in the property to Midland Visions.

Caliber hired a realtor to sell the property. Caliber alleges that, after Arlene Love of Midland Visions saw the "For Sale" sign, she contacted both the realtor and Roger Henderson and that Roger also called the realtor. The property was subsequently taken off the market.

Caliber sued Midland Visions, the Hendersons, and other individuals who owned interests in the property. Caliber sought to recover a proportionate share of

the taxes that it had paid and to quiet title in the property. Caliber also alleged that Midland Visions and the Hendersons had filed fraudulent records and that Midland Visions and Roger Henderson tortiously interfered with Caliber's contract with the realtor.

As relevant to this appeal, Midland Visions filed counterclaims against Caliber for tortious interference with Midland Visions' contracts with Whitley, Selmon, and Clement or, alternatively, for tortious interference with prospective business relations. The Hendersons, appearing pro se, filed counterclaims against Caliber for tortious interference with the Hendersons' prospective contract to sell their interests in the property to Midland Visions. The Hendersons specifically alleged that Caliber offered them more money for their interests than Midland Visions had offered but that Caliber had no intention of actually buying their interests. As a "counterclaim," the Hendersons also requested that the trial court dismiss all of Caliber's claims.

Caliber filed a TCPA motion to dismiss (1) Midland Visions' counterclaims for tortious interference with contract and tortious interference with prospective business relations, (2) the Hendersons' counterclaim for tortious interference with prospective business relations, and (3) the Hendersons' request that Caliber's claims be dismissed. Midland Visions and Roger Henderson responded to the motion. The trial court denied the motion, found that the motion was frivolous or brought to delay, and awarded Midland Visions $34,872.50 for reasonable costs and attorney's fees. The trial court made findings of fact and conclusions of law that Caliber failed to establish that the TCPA applied to the complained-about legal actions, that Midland Visions established by clear and specific evidence a prima facie case of

8

each element of its tortious interference counterclaims, and that Caliber's motion to dismiss was frivolous and solely intended to delay.[7]

*Analysis*

In its first two issues, Caliber asserts that the trial court erred when it determined (1) that the TCPA does not apply to Appellees' tortious interference counterclaims and to the Hendersons' request that Caliber's claims be dismissed and (2) that Appellees established by clear and specific evidence a prima facie case for each essential element of the tortious interference counterclaims.

*The TCPA*

The TCPA protects citizens from retaliatory lawsuits meant to intimidate or silence them on matters of public concern. *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 376 (Tex. 2019); *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). The stated purpose of the TCPA is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." CIV. PRAC. & REM. § 27.002; *see also ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam). We construe the TCPA "liberally to effectuate its purpose and intent fully." CIV. PRAC. & REM. § 27.011(b); *see also State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018).

The TCPA provides a procedure to expedite the dismissal of a "legal action" that appears to stifle the nonmovant's exercise of the rights protected by the statute. *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018); *see also* CIV. PRAC. & REM. §§ 27.003(a), .005(b). The movant bears the initial burden to show by a

---

[7]On June 25, 2019, the Hendersons informed this court that they would not submit a brief in this appeal because the trial court "only submitted the Fact Finding and Conclusion of Law of Midland Vision."

preponderance of the evidence that the legal action is based on, related to, or in response to the movant's exercise of the right of free speech, the right of association, or the right to petition. CIV. PRAC. & REM. §§ 27.003(a), .005(b); *Youngkin*, 546 S.W.3d at 679. If the movant makes this showing, the burden shifts to the nonmovant to establish by clear and specific evidence a prima facie case for each essential element of the claim in question. CIV. PRAC. & REM. § 27.005(c); *Youngkin*, 546 S.W.3d at 679. Even when the nonmovant satisfies this burden, the trial court must dismiss the legal action if the movant "establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." CIV. PRAC. & REM. § 27.005(d); *see also Youngkin*, 546 S.W.3d at 679–80. We review de novo the trial court's determination of whether the parties satisfied their respective burdens. *Hall*, 579 S.W.3d at 377.

*Applicability of the TCPA*

In its first issue, Caliber contends that the trial court erred when it determined that the TCPA does not apply to Appellees' counterclaims because (1) Midland Visions' and the Hendersons' tortious interference counterclaims are based on, related to, or in response to Caliber's exercise of the right of association and right of free speech and (2) the Hendersons' request that Caliber's claims be dismissed is based on, related to, or in response to Caliber's exercise of its right to petition.

Whether the TCPA applies to a legal action is an issue of statutory interpretation that we review de novo. *Youngkin*, 546 S.W.3d at 680. When we conduct this analysis, we interpret the statute's language as a whole, rather than reading its individual provisions in isolation from one another. *Id.* "[W]e ascertain and give effect to the Legislature's intent as expressed in the language of the statute," *Harper*, 562 S.W.3d at 11 (quoting *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008)), and construe the statute's words "according to their plain and

10

common meaning, unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results," *Youngkin*, 546 S.W.3d at 680 (quoting *Hughes*, 246 S.W.3d at 625–26); *see also Lipsky*, 460 S.W.3d at 590 ("Words and phrases that are not defined by statute and that have not acquired a special or technical meaning are typically given their plain or common meaning.").

To determine if a legal action falls within the scope of the statute, we consider the pleadings and the supporting and opposing affidavits in the light most favorable to the nonmovant. Civ. Prac. & Rem. § 27.006(a); *ETC Tex. Pipeline, Ltd. v. Addison Exploration & Dev., LLC*, 582 S.W.3d 823, 832 (Tex. App.—Eastland, 2019, pet. filed). If "a holistic review of the pleadings" demonstrates that the "legal action" is covered by the TCPA, the movant need show no more. *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 897 (Tex. 2018); *Hersh v Tatum*, 526 S.W.3d 462, 467 (Tex. 2017).

Each of the rights protected by the TCPA requires a "communication." Civ. Prac. & Rem. § 27.001(2)–(4). The TCPA defines a "communication" to include "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). Caliber's statements to Whitley, Selmon, Clement, and the Hendersons that underlie the tortious interference counterclaims are "communications" as defined by the TCPA.

### A. Right to Petition

The exercise of the right to petition under the TCPA includes a communication in a judicial proceeding. *Id.* § 27.001(4)(A)(i). Caliber argues that the TCPA applies to the Hendersons' request that Caliber's claims be dismissed because Caliber exercised its right to petition when it filed a communication, its original petition, in this judicial proceeding and, in response, the Hendersons filed a "legal action" that requested that Caliber's claims be dismissed.

The TCPA defines a "legal action" as a "lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." *Id.* § 27.001(6). We first note that, although denoted as a "counterclaim," the Hendersons' request that Caliber's claims be dismissed does not allege a substantive cause of action. Rather, the request is more akin to a prayer that Caliber take nothing on its claims. *See In re J.Z.P.*, 484 S.W.3d 924, 925 (Tex. 2016) (per curiam) ("We have stressed that 'courts should acknowledge the substance of the relief sought despite the formal styling of the pleading.'" (quoting *Ryland Enter., Inc. v. Weatherspoon*, 355 S.W.3d 664, 666 (Tex. 2011) (per curiam))); *State Bar of Tex. v. Heard*, 603 S.W.2d 829, 833 (Tex. 1980) (orig. proceeding). We cannot conclude that a defendant's prayer that the plaintiff "take nothing" on its claims is a "counterclaim" such that it is a "legal action" under the TCPA. *See BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990) (orig. proceeding) ("To qualify as a claim for affirmative relief, a defensive pleading must allege that the defendant has a cause of action, independent of the plaintiff's claim, on which he could recover benefits, compensation or relief, even though the plaintiff may abandon his cause of action or fail to establish it." (quoting *Gen. Land Office v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 570 (Tex. 1990))).

Under the statutory definition, the Hendersons' request that Caliber's claims be dismissed could also constitute a "legal action" if it is a "judicial pleading that requests legal or equitable relief." *See* CIV. PRAC. & REM. § 27.001(6). In *Deepwell Energy Services, LLC v. Aveda Transportation & Energy Services*, 574 S.W.3d 925, 927–29 (Tex. App.—Eastland 2019, pet. denied), we considered whether a TCPA motion to dismiss was a "judicial pleading or filing that requests legal or equitable relief" such that it would be subject to dismissal based on a TCPA countermotion to dismiss. We held that a TCPA motion to dismiss does not fall under this "catch-all"

provision of the statutory definition because it "is not a procedural vehicle for the vindication of a legal claim." 574 S.W.3d at 929. Although the Hendersons did not specifically invoke the TCPA, their request that Caliber's claims be dismissed is also not a procedural vehicle for the vindication of a legal claim. *See BHP Petroleum Co.*, 800 S.W.2d 841; *Gen. Land Office*, 789 S.W.2d at 570. Therefore, the Hendersons' request that Caliber's claims be dismissed is not a "legal action" as a "judicial pleading or filing that requests legal or equitable relief." *See* CIV. PRAC. & REM. § 27.001(6); *Paulsen v. Yarrell*, 537 S.W.3d 224, 234 (Tex. App.—Houston [1st Dist.] 2017, pet. denied).

Because the Hendersons' request that Caliber's claims be dismissed is not a "legal action," as defined by the statute, it is not subject to a TCPA motion to dismiss.

### B. Right of Association

Caliber next asserts that the TCPA applies to both Midland Visions' and the Hendersons' tortious interference counterclaims because those claims are based on, related to, or in response to Caliber's right of association. In the trial court, Caliber did not raise the issue that the TCPA applies to the Hendersons' counterclaims because those claims are based on, related to, or in response to Caliber's exercise of its right of association. A party may not assert on appeal that the TCPA applies to a legal action based on the party's exercise of a statutory right that was not relied upon in the trial court. *Rossa v. Mahaffey*, No. 11-18-00347-CV, 2019 WL 5800283, at *4–5 (Tex. App.—Eastland Nov. 7, 2019, no pet. h.). Therefore, whether the TCPA applies to the Hendersons' tortious interference counterclaims because those claims are based on, in response to, or related to Caliber's right of association has not been preserved for our review. *See id.*

Moreover, the record does not establish that the right of association is involved in this case. The exercise of the right of association under the TCPA means

13

"a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." CIV. PRAC. & REM. § 27.001(2). Caliber argues that it exercised its right of association when it joined with Whitley, Selmon, and Clement "to collectively express, promote, pursue, or defend" the "common interest" of "the purchase and sale of real estate."[8]

It is undisputed that Whitley, Selmon, and Clement desired to sell their interests in the property before the foreclosure sale and that Caliber wanted to buy those interests. However, there is no allegation, and no evidence, that Caliber and any of the three women intended to develop the property together or to engage in an ongoing business enterprise. Rather, Caliber and the three women were on opposite sides of a business transaction and were each promoting or pursuing their own interests. While we need not delineate in this case the outer contours of "common interest" under the TCPA, we hold that to establish a "common interest" there must be more than two parties with distinctly different interests completing a business transaction. *See Levatino v. Apple Tree Café Touring, Inc.*, 486 S.W.3d 724, 728 (Tex. App.—Dallas 2016, pet. denied) (concluding that communications "between

---

[8]There is a conflict among the courts of appeals about whether the right of association requires a "public" or "citizen" component. *Compare Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 426 (Tex. App.—Dallas 2019, pet. denied) (concluding that the "right of association" under the TCPA must involve public or citizen participation), *and Kawcak v. Antero Res. Corp.*, 582 S.W.3d 566, 582 (Tex. App.—Fort Worth 2019, pet. denied) ("A definition of 'common' that focuses on the public or group implements both purposes [of the TCPA] while one that focuses on any interest shared between two people serves neither."), *with Gaskamp v. WSP USA, Inc.*, No. 01-18-00079-CV, 2018 WL 6695810, at *12 (Tex. App.—Houston [1st Dist.] Dec. 20, 2018, no pet. h.) (concluding that communications between alleged tortfeasors about the formation of a new company, including communications about allegedly misappropriating information and conspiring to breach alleged fiduciary duties, constituted the "[e]xercise of the right of association" under the TCPA) (alteration in original), *Morgan v. Clements Fluids S. Tex., LTD.*, No. 12-18-00055-CV, 2018 WL 5796994, at *3 (Tex. App—Tyler Nov. 5, 2018, no pet.) (same), *Abatecola v. 2 Savages Concrete Pumping, LLC*, No. 14-17-00678-CV, 2018 WL 3118601, at *7–8 (Tex. App.—Houston [14th Dist.] June 26, 2018, pet. denied) (mem. op.) (same), *and Craig v. Tejas Promotions, LLC*, 550 S.W.3d 287, 295–96 (Tex. App.—Austin 2018, pet. denied) (same). We need not address that question in this case because Caliber failed to establish that its communications with Whitley, Selmon, or Clement were between individuals who had a "common interest."

adversaries" were "not between persons acting to promote, pursue, or express their common interest"). On this record, Caliber failed to establish by a preponderance of the evidence that Midland Visions' tortious interference counterclaims are based on, related to, or in response to Caliber's exercise of the right of association.

### C. Right of Free Speech

Caliber finally contends that the TCPA applies to Appellees' tortious interference counterclaims because the claims are based on, related to, or in response to Caliber's exercise of the right of free speech. The TCPA defines the "exercise of the right of free speech" as a "communication made in connection with a matter of public concern." CIV. PRAC. & REM. § 27.001(3). A "matter of public concern" includes an issue related to health or safety; environmental, economic, or community well-being; the government; or a good, product or service in the marketplace. *Id.* § 27.001(7)(A)–(C), (E).

Private communications made in connection with a matter of public concern fall within the TCPA's definition of the exercise of the right of free speech. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam). Further, the TCPA does not require that the communications specifically mention a matter of public concern or have more than a "tangential relationship" to such a matter. *Coleman*, 512 S.W.3d at 900. Rather, the TCPA applies so long as the movant's statements are "in connection with" "issue[s] related to" any of the matters of public concern listed in the statute. *Id.*

In its opening brief on appeal, Caliber argues that its communications with Whitley, Selmon, Clement, and the Hendersons about the purchase of interests in the property were made in connection with an issue related to "economic matters," the government, and goods in the marketplace. In its reply brief, Caliber also asserts

15

that its communications with Whitley, Selmon, and Clement were made in connection with an issue related to community well-being.

We first consider whether Caliber's communications were made in connection with a matter of public concern because they related to economic or community well-being. *See* CIV. PRAC. & REM. § 27.001(7)(B). Caliber contends that its communications with Whitley, Selmon, Clement, and the Hendersons were made in connection with the purchase and sale of interests in the property and, therefore, related to economic well-being. However, not every communication about real property is a matter of public concern. *See Mulcahy v. Cielo Prop. Grp., LLC*, No. 03-19-00117-CV, 2019 WL 4383960, at \*3 (Tex. App.—Austin Sept. 13, 2019, no pet. h.) (mem. op.) (declining to hold that "*any* exchange of information owned by a real-estate enterprise is a matter of public concern"). Specifically, "economic well-being" under the TCPA requires that a communication about real property have an impact on more than the party's personal financial well-being. *Schmidt v. Crawford*, 584 S.W.3d 640, 650 (Tex. App.—Houston [1st Dist.] 2019, no pet.).[9] In this case, Caliber's communications with Whitley, Selmon, Clement, and the Hendersons about the purchase of interests in the property related only to the parties' personal financial well-being and therefore were not made in connection with an issue related to economic well-being.

---

[9]Because the term "economic" is not defined in the TCPA, the *Schmidt* court relied on the common meanings of "economic," "economics," and "economy." *See* 584 S.W.3d at 650 (citing *Economic*, NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010) (defining term as "of or relating to economics or the economy"); *Economics*, NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010) (defining term as "the condition of a region or group as regards material prosperity"); *Economy*, NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010) (defining term as "the wealth and resources of a country or region," especially "in terms of the production and consumption of goods and services"); *Economics*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The social science dealing with the production, distribution, and consumption of goods and services."); *Economy*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("management or administration of the wealth and resources of a community (such as a city, state, or country)" or "sociopolitical organization of a community's wealth and resources")).

Caliber also argues in its reply brief that its communications with Whitley, Selmon, and Clement were related to community well-being because the communications impacted the other owners of the property as well as persons who sought to purchase either interests in the property or the property at auction. We first note that, although Caliber asserted in the trial court that its communications with Whitley, Selmon, and Clement were made in connection with a matter of public concern, it did not argue in its motion to dismiss, in its reply to Appellees' responses to the motion to dismiss, or in its opening brief on appeal that those communications were made in connection with community well-being. However, because the "unique language" of the TCPA requires us to determine whether the statute applies based on a holistic review of the pleadings, our de novo review is not limited to "the precise legal arguments or record references a moving party made to the trial court regarding the TCPA's applicability." *Adams*, 547 S.W.3d at 897. Therefore, because Caliber raised in the trial court the issue that its communications with Whitley, Selmon, and Clement were made in connection with a matter of public concern, we will consider its argument on appeal that those communications related to community well-being, a subpart of the statutory definition of "matter of public concern." *See id.* at 896 ("Adams raised as an issue in the trial court and the court of appeals that he was entitled to dismissal under the TCPA because the defamation claim was based on his speech about a matter of public concern. He was not required on appeal or at trial to rely on precisely the same case law or statutory subpart that we now find persuasive."); *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 764 n.4 (Tex. 2014) ("We do not consider *issues* that were not raised in the courts below, but parties are free to construct new *arguments* in support of issues properly before the Court.").

A communication is related to "community well-being" if it affects the well-being of the community at large or at least a subset of its residents. *Schmidt*, 584 S.W.3d at 651; *see also U.S. Anesthesia Partners of Tex., P.A. v. Mahana*, No. 05-18-01414-CV, 2019 WL 4044086, at \*4 (Tex. App.—Dallas Aug. 27, 2019, pet. filed) (noting that plain meaning of community well-being "refers to a group's or society's state of being healthy or happy").[10] Midland Visions pleaded that Caliber's communications with Whitley, Selmon, and Clement tortiously interfered with Midland Visions' contractual or prospective business relationship with the three women. Midland Visions did not allege that the communications affected either the community at large, any other owner of an interest in the property, or any other person who was attempting to buy all or part of the property. Further, there is no evidence that any person, other than Caliber and Midland Visions, was seeking to purchase Whitley's, Selmon's, or Clement's interests in the property. Finally, there is no evidence that whether Caliber, as opposed to Midland Visions, acquired Whitley's, Selmon's, or Clement's interests in the property had any impact on the community at large or even a subset of its residents. *See Mahana*, 2019 WL 4044086, at \*4 (noting communication that did not relate to drug use in the community at large or even within a subset of the community was not made in

---

[10]Because "community" is not defined in the TCPA, the *Schmidt* court relied on the common definition of "community." *See* 584 S.W.3d at 651 (citing *Community*, NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010) ("a group of people living in the same place or having a particular characteristic in common" or "a particular area or place considered together with its inhabitants"); *Community*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("neighborhood, vicinity, or locality" or "society or group of people with similar rights or interests")). The *Mahana* court relied on the common definitions of both "community" and "well-being." *See* 2019 WL 4044086, at \*4 n.2 (citing *Community*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("1. A neighborhood, vicinity, or locality. 2. A society or group of people with similar rights or interests."); *Well-being*, DICTIONARY.COM, https://www.dictionary.com/browse/well-being (last visited Aug. 7, 2019) ("a good or satisfactory condition of existence; a state characterized by health, happiness, and prosperity; welfare"); *Well-being*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1981) (the state of being happy, healthy, or prosperous)).

connection with an issue related to community well-being). On this record, we cannot conclude that Caliber's communications with Whitley, Selmon, and Clement were made in connection with an issue related to community well-being.

Caliber next asserts that its communications with Whitley, Selmon, Clement, and the Hendersons were made in connection with an issue related to the government because the Appraisal District had posted the property for sale. *See* CIV. PRAC. & REM. § 27.001(7)(C). A communication is related to the "government" when it is about governmental misconduct, *Adams*, 547 S.W.3d at 896; direct conduct by the government, such as purchasing property, *Schimmel v. McGregor*, 438 S.W.3d 847, 859 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); or the operation of the government, *In re Lipsky*, 411 S.W.3d 530, 543 (Tex. App.—Fort Worth 2013, orig. proceeding), *mandamus denied*, 460 S.W.3d 579 (Tex. 2015); *see also Riggs & Ray, P.C. v. State*, No. 05-17-00973-CV, 2019 WL 4200009, at *8 (Tex. App.—Dallas Sept. 5, 2019, no pet. h.) (mem. op.) (noting that government's financial relationship with a party was a matter of public concern under Section 27.001(7)(C)).

Here, there are no allegations, and no evidence, that Caliber's communications were about any misconduct by the Appraisal District when it posted the property for sale, the operations of the Appraisal District, or the purchase of the property by the Appraisal District. Rather, Caliber's communications with Whitley, Selmon, Clement, and the Hendersons related to the purchase of private interests in the property through private sales. The fact that the posting of the property for sale by the Appraisal District was the impetus for Caliber's decision to purchase interests in the property and for Whitley's, Selmon's, Clement's, and the Hendersons' decision to sell their interests in the property did not make Caliber's communications about the purchase of those interests related to the "government."

Caliber finally argues that, because the property is a "good," Caliber's communications with Whitley, Selmon, Clement, and the Hendersons were made in connection with an issue related to a good in the marketplace. *See* CIV. PRAC. & REM. § 27.001(7)(E). To support its argument, Caliber relies on *Quintanilla v. West*, 534 S.W.3d 34, 45 (Tex. App.—San Antonio 2017), *reversed on other grounds*, 573 S.W.3d 237 (Tex. 2019), in which the San Antonio Court of Appeals held that financing statements filed in the public records were communications made in connection with an issue related to a good in the marketplace because the filing provided notice to the public of an encumbrance on "real property offered for sale in the public marketplace."

In *Schmidt*, the Houston First Court of Appeals disagreed with the holding in *Quintanilla*. 584 S.W.3d at 649. In *Schmidt*, hundreds of plaintiffs alleged that the defendants required them to sign deeds of trust for their homes as security for bail bond loans, fraudulently altered the deeds to inflate the amount of the indebtedness, and filed the deeds in the public records, thereby creating illegal liens on the plaintiffs' homesteads. *Id.* at 646. The defendants filed a motion to dismiss pursuant to the TCPA, *id.*, and alleged, in part, that the TCPA applied to the plaintiffs' claims because the filings in the public records were communications that related to the "transferability of real property" and therefore qualified as a matter of public concern as a good in the marketplace, *id.* at 649.

Because the TCPA does not define the term "good," the Houston First Court of Appeals looked to the common meaning of the term. *Id.* It noted that "'[g]oods' ordinarily refer to tangible or moveable personal property, as opposed to realty." *Id.* (citing *Goods*, NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010) (defining term as "merchandise or possessions"); *Goods*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining term to include tangible or moveable personal property other than

20

money, particularly merchandise, and referring to "goods and services" as an illustration of the term's ordinary usage); *Realty*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "realty" or "real property" as "land and anything growing on, attached to, or erected on it")). The court held that the common meaning of "good" is not "broad enough to embrace real property," that the TCPA "does not expand the definition of 'good' beyond its ordinary usage," and that the language of the statute could not be judicially amended "to give the term a more expansive meaning than it ordinarily bears." *Id.* at 649–50. We find *Schmidt*'s reasoning to be persuasive and hold that real property is not a "good" under Section 27.001(7)(C) of the TCPA. Therefore, Caliber's communications with Whitley, Selmon, Clement, and the Hendersons about the purchase of interests in the property were not related to a good in the marketplace.

We hold that the trial court did not err when it determined that Caliber failed to establish by a preponderance of the evidence that Appellees' tortious interference counterclaims or the Hendersons' request that Caliber's claims be dismissed were based on, related to, or in response to Caliber's exercise of the right to petition, right of association, or right of free speech. Accordingly, we overrule Caliber's first issue. Given our conclusion that Caliber failed to meet its burden to establish that the TCPA applies to Appellees' tortious interference counterclaims and the Hendersons' request that Caliber's claims be dismissed, we do not reach Caliber's second issue in which it asserts that Appellees failed to establish by clear and specific evidence a prima facie case of each essential element of their claims. *See* TEX. R. APP. P. 47.1.

*Attorney's Fees and Costs*

In its third and fourth issues, Caliber contends (1) that, because its motion to dismiss should have been granted, the trial court erred when it failed to award Caliber

21

attorney's fees, costs, and sanctions and (2) that the trial court erred when it awarded Midland Visions attorney's fees and costs.

We review the trial court's decision to award attorney's fees under the TCPA for an abuse of discretion. *Sullivan v. Tex. Ethics Comm'n*, 551 S.W.3d 848, 857 (Tex. App.—Austin 2018, pet. denied); *see also Pinghua Lei v. Natural Polymer Int'l Corp.*, 578 S.W.3d 706, 717 (Tex. App.—Dallas 2019, no pet.). A trial court abuses its discretion when it acts arbitrarily or unreasonably or without regard to guiding principles. *Sullivan*, 551 S.W.3d at 857; *see also Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

If a trial court grants a motion to dismiss under the TCPA, it is required to award the moving party (1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the action as justice and equity may require and (2) sanctions against the party who brought the legal action as the court determines sufficient to deter the party from bringing similar actions. CIV. PRAC. & REM. § 27.009(a). As discussed above, the trial court properly denied Caliber's motion to dismiss; therefore, Caliber was not entitled to an award of attorney's fees, costs, or sanctions. We overrule Caliber's third issue.

If the trial court finds that the motion to dismiss was frivolous or solely intended to delay, it may award costs and reasonable attorney's fees to the nonmovant. *Id.* § 27.009(b). "[A] finding that a motion to dismiss is not well taken must precede an award of the respondent's attorney's fees under Section 27.009(b)." *In re Estate of Calkins*, 580 S.W.3d 287, 300 (Tex. App.—Houston [1st Dist.] 2019, no pet.). The trial court found that Caliber's motion to dismiss was frivolous and solely intended for delay and awarded Midland Visions $34,872.50 for reasonable court costs and attorney's fees. Caliber contends that there is no legal or factual basis or evidence to support the trial court's findings.

22

"Frivolous" is not defined in the TCPA.  However, "the word's common understanding contemplates that a claim or motion will be considered frivolous if it has no basis in law or fact and lacks a legal basis or legal merit."  *Sullivan*, 551 S.W.3d at 857 (internal quotation marks, citations, and alterations omitted); *see also Pinghua Lei*, 578 S.W.3d at 717.  Caliber argues that the motion to dismiss was not frivolous because "courts have found that the [TCPA] applies to claims for tortious interference with existing and prospective business relations" and that the facts demonstrate that the motion to dismiss was not frivolous.

We have determined that Caliber's motion to dismiss did not have a basis in fact.  Further, the cause of action alleged by the nonmovant is not determinative of whether a TCPA motion to dismiss has a basis in law.  Rather, prior to filing the motion to dismiss, the movant must evaluate whether there is a legal basis to assert that the nonmovant's legal action is based on, related to, or in response to the movant's exercise of a right protected by the statute.  CIV. PRAC. & REM. §§ 27.003(a), .005.  This necessarily involves an analysis of the specific communications underlying the nonmovant's claims.  *See Cheniere Energy, Inc. v. Lotfi*, 449 S.W.3d 210, 216–17 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (noting that there must be some "nexus" between the "communication used to invoke the TCPA and the generally recognized parameters of First Amendment protections" in order to avoid "draw[ing] within the TCPA's summary dismissal procedures private suits implicating only private issues"); *see also* CIV. PRAC. & REM. § 27.003(a) (party may file a motion to dismiss if legal action "is based on, relates to, or is in response to" protected activity).

There is no indication in the record that Caliber performed such an analysis prior to filing the motion to dismiss.  Caliber also did not include any substantive analysis in its motion to dismiss as to why its private communications with Whitley,

23

Selmon, or Clement over a private business transaction constituted the exercise of a protected right under the statute. The fact that the TCPA may apply to some tortious interference claims based on different facts and communications is not, standing alone, a sufficient basis in law for Caliber to assert that it exercised a right protected by the TCPA when it communicated with Whitley, Selmon, or Clement.

We stress that the fact that a motion to dismiss under the TCPA is ultimately denied is not sufficient, in and of itself, to support a finding that the motion was frivolous. However, on this record, we cannot conclude that the trial court abused its discretion when it determined that Caliber's motion to dismiss was frivolous. Therefore, we need not address whether the trial court abused its discretion when it found that the motion to dismiss was solely intended for delay. *See* TEX. R. APP. P. 47.1. We overrule Caliber's fourth issue.

*This Court's Ruling*

We affirm the order of the trial court.


KEITH STRETCHER

JUSTICE


November 27, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[11]

Willson, J., not participating.

---

[11]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.